UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 17-CR-6107-FPG
DECISION AND ORDER

ISRAEL CEDENO-MARTINEZ,

Defendant.

## INTRODUCTION

On May 4, 2020, Defendant Israel Cedeno-Martinez, an inmate incarcerated at Federal Correctional Institution Allenwood Low ("Allenwood Low"), filed a motion for compassionate release from prison due to the COVID-19 pandemic. ECF No. 168. On June 25, 2020, the Court denied Defendant's motion on the grounds that the Section 3553(a) factors would not be served by early release. ECF No. 173. On October 8, 2020, Defendant filed a motion for reconsideration. ECF No. 178. On December 11, 2020, Defendant filed an additional motion for reconsideration asserting further information for the Court to consider. ECF No. 184. Due to Defendant's *pro se* status, the Court will consider the information set forth in both Defendant's initial motion for reconsideration, ECF No. 178, and Defendant's second motion for reconsideration, ECF No. 184. Nevertheless, for the reasons that follow, both of Defendant's motions are DENIED.

## BACKGROUND

On June 20, 2018, Defendant pled guilty to conspiracy with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 846. ECF Nos. 142, 143. On October 22, 2018, Defendant was sentenced to 151 months of imprisonment and eight years of supervised release. ECF Nos. 154, 159. Defendant is currently serving his sentence at Allenwood Low and is scheduled to be released in June 2027. ECF No. 186.

**DISCUSSION**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Lucas*, No. 15-CR-143, 2020 U.S. Dist. LEXIS 75428, at *3 (W.D.N.Y. Apr. 29, 2020) (citation, internal quotation marks, and brackets omitted). One such statute is 18 U.S.C. § 3582(c)(1)(A), which provides an exception "often referred to as 'compassionate release.'" *Id.* Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if a defendant can show that (1) he has met the statutory exhaustion requirement; (2) "extraordinary and compelling reasons" warrant a reduction; (3) he is not a danger to the community; and (4) a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *Id.* at *3-4; *see also* U.S.S.G. § 1B1.13 (the United States Sentencing Guidelines Policy Statement on compassionate release).

In its Decision and Order denying Defendant's motion for compassionate release, the Court found that Defendant had not presented extraordinary and compelling reasons for release. ECF No. 173. Defendant had argued that he had hypertension, type II diabetes, diabetic neuropathy, chronic statis dermatitis due to chronic venous insufficiencies, varicose veins, and allergies, which put him at greater risk for developing complications due to COVID-19. While the Court noted that his PSR indicated he had high cholesterol, diabetes, and diabetic neuropathy, there were no medical records to confirm that Defendant suffered from the other alleged ailments. *See id.* Not only did the Court therefore determine that Defendant was unable to met his burden of demonstrating extraordinary and compelling reasons warranting release, but he also could not establish that he was not a danger to community or that a reduction in the sentence would comport with the Section 3553(a) factors. *See id.*

2

Now, in his motion for reconsideration, Defendant again presents information regarding his alleged health conditions including that he suffers from obesity and alleges his ongoing health problems will "become terminal cancer," that incarceration at Allenwood Low adds to his risk of infection with COVID-19, and that he has been "100% rehabilitated while in prison."  ECF No. 178.

## I.     Defendant's Health Conditions

In his motion for reconsideration, Defendant argues that he suffers from diabetes, high blood pressure, neuropathy, cardiovascular problems, and obesity, and that such conditions put him at greater risk of experiencing complications from COVID-19.

"[A] defendant's pre-existing health conditions . . . in combination with the increased risks of COVID-19 in prisons" may, in some cases, "constitute 'extraordinary and compelling reasons' warranting relief."  *United States v. Delgado*, No. 3:18-CR-17-(VAB)-1, 2020 U.S. Dist. LEXIS 84469, at *6 (D. Conn. Apr. 30, 2020).  Courts "base[] their resolution of compassionate release requests in the COVID-19 era on whether the inmate-movant ha[s] an underlying medical condition that place[s] her or him at risk of developing a severe case of the illness."  *United States v. Lagan*, No. 1:18-CR-0283 (LEK), 2020 U.S. Dist. LEXIS 86330, at *8 (N.D.N.Y. May 11, 2020).  "In making such a determination, numerous courts have looked to guidelines issued by the Centers for Disease Control and Prevention ("CDC") as to what conditions place an individual at higher risk for severe illness."  *Id.* (citation and internal quotation marks omitted).

In its prior Decision and Order, the Court noted that no medical records were provided to confirm the Defendant's conditions.  ECF No. 173.  Here, while the records provided to the Court do in fact indicate that Defendant suffers from diabetes, it seems to be under control and Defendant does not require the use of insulin.  *See* ECF No. 178-1 at 3.  The records also indicate that

Defendant suffers from hypertension, but again, such condition seems to be well controlled by the current treatment within the Bureau of Prisons ("BOP").  *See id.* at 5.  Nowhere in the medical records is there any indication that Defendant suffers from terminal cancer or has undergone testing for cancer-related concerns as alleged in his motion.  *See* ECF No. 178 at 4 ("Defendant's medical problems began at his ankles and have grown in 3.5 years to his genital area and will become terminal cancer.").  Moreover, Defendant is currently classified as needing only "Level 2" medical care, which indicates he is a "stable outpatient[] who require[s] clinician evaluations monthly to every 6 months."  ECF No. 186.

Regarding his incarceration, Defendant argues in his motion for reconsideration that inmates at the UNICOR factory where he works are only screened for illness through daily temperature checks, which he claims prevents potentially asymptomatic COVID-19 cases from detection.  ECF No. 178.  He also asserts that the sanitation conditions and limited space in the prison do not allow for prisoners to keep safe from COVID-19 infections regardless of the amount of effort made.  *Id.*  Finally, Defendant notes that there has been an increase in coronavirus cases in the facility, providing further support for his necessary release.  ECF No. 184.

However, recent data from the BOP does not suggest that Allenwood Low is currently facing a COVID-19 outbreak, let alone an uncontrolled one.  Indeed, as of March 30, 2021, only one Allenwood Low inmate has an active case of COVID-19.  *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last visited Mar. 30, 2021).  No staff members at the facility currently have COVID-19.  *Id.*  Likewise, no inmates are currently waiting on COVID-19 tests and over 600 tests have been administered to inmates.  *Id.*  Importantly, the BOP has also been administering vaccinations to both inmates and staff—as of March 30, 2021, over 100,000 doses have been administered by the BOP.  In the Allenwood Complex, over

4

800 inmates and over 300 staff have been fully vaccinated.  This number is likely to continue to grow.  *See id.* ("As BOP is allocated additional shipments of the vaccine, it will be offered to additional locations and to additional staff and inmates at those locations.").

In light of the above, Defendant has again not made a case that, due to his incarceration, he is living under conditions that make exposure to COVID-19 more likely, and is within the class of individuals whose pre-existing conditions increase the likelihood of complications if infected by the virus.  Thus, Defendant has not established extraordinary and compelling circumstances justifying his release.  *See, e.g.*, *United States v. Stevens*, 459 F. Supp. 3d 478, 484 (W.D.N.Y. 2020) (defendant did not demonstrate extraordinary and compelling circumstances despite being 73-years old and suffering from diabetes and diabetes-related neuropathic pain).

## II.    Whether Compassionate Release Would Undermine the Goals of the Original Sentence

Even if Defendant could establish the existence of extraordinary and compelling circumstances, the Court would nevertheless conclude that a reduction of his term of imprisonment is inconsistent with the factors set forth in § 3553(a).

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]
> (5) any pertinent [Sentencing Commission policy statement]

5

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418, at *7 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)).

The Court already weighed these factors when it imposed the original term of imprisonment. Thus, in the context of the present motion, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, No. 02-CR-114, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) (discussing legislative history of provision). In other words, the issue is whether the original § 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at *7.

At sentencing, the Court noted that Defendant "was an integral part of [a] drug trafficking organization." ECF No. 159 at 22. The organization was connected to "at least three overdose deaths." *Id.* at 23. The Court applied a downward adjustment for Defendant's acceptance of responsibility, acknowledgment of his involvement, and the statements he made to the Court at sentencing—which included a recognition of his struggles with substance abuse and the negative impact it had not only on himself, but his family and the community. *See id.* at 19-21, 23. Because of the total offense level and Defendant's criminal history, the guidelines imposed a sentencing range between 121 to 151 months of imprisonment, with a minimum sentence of 10 years and a maximum sentence of life. *Id.* at 25. However, the Court could not overlook the Defendant's

involvement and sentenced him to a term of 151 months of imprisonment, which reflected its analysis of the § 3553(a) factors at that time.

 For all the reasons considered at sentencing, a 151-month sentence was and remains appropriate.  If released now, Defendant will have only served about half of his sentence.  That term would not substantially satisfy the purposes of the original sentence, as it would fail to "reflect the seriousness of the offense, []promote respect for the law, [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).  Indeed, this Court previously noted in deciding Defendant's initial motion for compassionate release, that a reduction in his sentence would not comport with the § 3553(a) factors, specifically discussing Defendant's long criminal history, the severity of the conduct involved in the case, and the small portion of the sentenced served.  *See* ECF No. 173; *see e.g.*, *United States v. Poncedeleon*, No. 18-CR-6094-FPG, 2020 WL 3316107, at *3 (W.D.N.Y. June 18, 2020) (collecting cases denying compassionate release to inmates who have served "only a small portion of" their sentences because it would not comport with Section 3553(a) factors); *see also United States v. Hueston*, No. 14-CR-332 (PAE), 2020 WL 3472253, at *4 n.7 (S.D.N.Y. June 25, 2020) (collecting cases finding that release was inconsistent with the § 3553(a) factors where defendants had only served approximately 25 percent of their sentences).  Such concerns have not changed.

The Court recognizes that the situation Defendant finds himself in is of serious concern: as an inmate, he has far less control over his environment and is far more reliant on correctional officials to ensure his safety during the pandemic.  Nevertheless, while "[a] just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease," *Vence-Small*, 2020 WL 2214226, at *4, neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment.  Even in light of his medical conditions,

Defendant has not demonstrated that a sentence of time-served or home confinement is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's motions for reconsideration are DENIED.

IT IS SO ORDERED.

Dated: March 31, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court